IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ABRAHAM WEBER | § | |
|     TDCJ-CID #1141650 | § | |
| V. | § | C.A. NO. C-04-378 |
| | § | |
| WILLIAM STEVENS, ET AL. | § | |

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff alleges that his cell at the McConnell Unit leaked whenever it rained, causing the cell to flood, and that this condition amounts to cruel and unusual punishment in violation of the Eighth Amendment. (D.E. 1). Defendants move for summary judgment to deny plaintiff's claims. (D.E. 36). Plaintiff has filed a "dispositive motion" that is construed as a response in opposition to defendants' summary judgment motion. (D.E. 39). For the reasons stated below, defendants' motion for summary judgment is granted, and plaintiff's claims are dismissed on the merits.

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, pursuant to 28 U.S.C. § 636, on August 11, 2005, this case was transferred to the undersigned magistrate judge to conduct all future proceedings, including entry of final judgment. (D.E. 41).

**II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is presently incarcerated at the Ferguson Unit in Midway, Texas. He filed suit on July 15, 2004, alleging that the conditions of confinement at the McConnell Unit amounted to cruel and unusual punishment. Plaintiff named as defendants William Stevens, the McConnell Unit warden, and Douglas Dretke, the Director of the Texas Department of Criminal Justice, Criminal

Institutions Division ("TDCJ-CID"), arguing that defendants were aware of the cruel conditions, and failed to remedy them. Plaintiff seeks an injunction ordering the State to repair the structural damage of the McConnell Unit. In addition, he seeks compensatory damages for his pain and suffering.

Following initial screening, the case was retained and service ordered on defendants. (D.E. 5, 6).

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following:

DSJ[1] Ex. A:   Relevant portions of plaintiff's medical records;

DSJ Ex. B:   Relevant portions of the McConnell Unit maintenance records;

DSJ Ex. C:   Relevant portions of plaintiff's classification records; and

DSJ Ex. D:   Relevant portions of plaintiff's grievance records.

The following facts are not in dispute:

On May 16, 2003, plaintiff was transferred to the McConnell Unit. DSJ Ex. C at 1. Upon his arrival at the McConnell unit, plaintiff was assigned to Administrative Segregation ("Ad-Seg"), which is located in Building 12. PR at ¶ 1. There are no floor drains in inmate cells in Ad-Seg. PR at ¶ 4.

On February 24, 2004, plaintiff was moved from D-pod, 29-cell to A-pod, 9-cell. DSJ Ex. C at 1; PR at ¶ 2. On March 14, 2004, it rained and plaintiff's cell flooded. PR at ¶ 6. At approximately 5:30 p.m., the water in plaintiff's cell was approximately two inches deep. PR at ¶

---

[1] "DSJ" refers to defendants' summary judgment motion, (D.E. 36). "PR" refers to plaintiff's response, (D.E. 39).

6. Officer Todd observed the water, and plaintiff asked him for materials to clean-up the water. Id. Officer Todd left and did not return. Id.

When the second shift came on duty, plaintiff notified another officer about the water and asked for materials to clean the water. PR at ¶ 7. That officer left and did not return. Id. Later, correctional officers found plaintiff on the floor of his cell. DSJ Ex. A at 109. The officers notified the medical department, which responded to plaintiff's cell. Id. Plaintiff was transported via backboard to the unit infirmary. Id. On the way to the infirmary, Officer Trevino, Sergeant Blidge, and Lieutenant Castro told plaintiff that he had a seizure and that they had to use smelling salts to revive him. PR at ¶ 9.

Upon his arrival at the infirmary, plaintiff was alert and responsive. DSJ Ex. A at 104. Medical staff noted no broken skin areas and that plaintiff was able to move all of his extremities. Id. at 109. He was treated with an ice pack and monitored for approximately two hours, with neurological tests performed every fifteen minutes. Id. at 109. Plaintiff was then returned to his same cell. PR at ¶ 9. The water in his cell had been cleaned-up. Id.

On March 15, 2004, plaintiff was transported to Spohn Hospital in Beeville for x-rays. PR at ¶ 10. A CT scan revealed no brain injury or dysfunction. DSJ Ex. A at 105-06. An x-ray of plaintiff's shoulder revealed no fracture. Id. at 105. Plaintiff was released for transport back to the McConnell Unit with a diagnosis of "fall-contusion." Id. at 106. He was prescribed Naprosyn. Id.

Upon his return to the McConnell Unit, plaintiff was placed back in the same cell. DSJ Ex. C at 1.

On March 30, 2004, plaintiff filed a step 1 grievance, complaining about the March 14 cell flooding and the failure of the guards to give him materials to mop-up the water, leading to his fall

and injuries. DSJ Ex. D at 3-4. He also complained of unsanitary conditions, including unsanitized food tray carts and roaches. Id.

In a response dated April 19, 2004, assistant warden Eileen Kennedy stated that an investigation had been undertaken in response to his grievance, and that there was a work order in place to repair the roof leak. DSJ Ex. D at 4. Warden Kennedy stated that Officer Todd had in fact reported the leaks to the maintenance department, and that plaintiff had received proper medical care. Id. She also noted that Food Service had advised her that all tray carts were cleaned and sanitized and that the kitchen area was sprayed once a month for roaches. Id.

On April 25, 2004, plaintiff filed a step 2 grievance, complaining that the roof to his cell was still defective and that his cell still flooded. DSJ Ex. D at 1-2. Plaintiff also complained of other alleged unsanitary conditions and argued that his step 1 complaints had not been addressed adequately. Id. Plaintiff also stated that, although his medical complaints had been handled adequately by the McConnell Unit staff, he was mistreated by the Spohn Hospital doctor who barely examined him. Id. On May 27, 2004, plaintiff's step 2 grievance was denied with the notation that his complaints had been answered in the step 1 grievance. DSJ Ex. D at 2.

Beginning on June 1, 2004, plaintiff began complaining about chronic neck pain and pain in his left eye. DSJ Ex. A at 17-95.

On September 7, 2004, plaintiff was transferred to a new cell in Building 12. DSJ Ex. C at 1. Plaintiff was never housed in cell A-09 again. Id. After being transferred out of cell A-09, plaintiff was housed in three other cells at the McConnell Unit. PR at ¶¶ 14-15. Each of these cells had unsanitary conditions and leaked. Id.

By memorandum dated December 21, 2004, a McConnell Unit maintenance department official, Sandra Garza, noted:

> Be advised the roof leaks on McConnell unit are continuously being repaired.  McConnell Unit has had a major work request to replace the roofs on the entire unit since 8/15/02 (tracking # 12405), projected roof replacement is fiscal year 2006-2007.
>
> . . .
>
> Currently area maintenance (1 craftsman) is assigned to McConnell unit to assist with roof repairs.

DSJ Ex. C at 3.

Since March 14, 2005, plaintiff has been housed at the Ferguson Unit in Midway, Texas. DSJ at ¶ O.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motions.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses.  See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating

5

that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

**A.   Official capacity claims and injunctive relief.**

Plaintiff has sued Director Dretke and Warden Stephens in their official and individual capacities. He seeks prospective injunctive relief in the form of structural repairs made to the McConnell Unit.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past. Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). To the extent plaintiff is suing Director Dretke and Warden Stevens in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and are dismissed.

A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or state entity, where the relief sought is injunctive in nature and prospective in effect. Id. (citing Ex parte Young, 209 U.S. 123 (1980)). In order to state an injunctive relief claim, a plaintiff generally must assert that a policy or custom of the governmental entity played a part in the violation of federal law. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The entity itself must have been a "moving force' behind the deprivation. Id.

Plaintiff does not assert that a TDCJ policy or custom was the moving force behind the alleged unconstitutional conditions. Instead, he claims that Director Dretke and Warden Stevens,

by virtue of their job descriptions and titles, were responsible for creating and implementing a policy or custom that led to the leaks in the cells and the resulting constitutional violation.  See PR at 3 ("William Stevens ... is ultimately respondsable [sic] for the day to day operations, management, and maintenance ....   Douglas Dretke is ultimately responsible for the day to day operations, management, and maintnance [sic] ....).  Plaintiff fails to allege that a *TDCJ* custom or policy led to the alleged constitutional violation.  Thus, he fails to state properly a claim for injunctive relief.

Moreover, even if plaintiff's claim for injunctive relief was pled properly, plaintiff's request that the Court order the repair of the McConnell Unit's structural damage is moot because plaintiff is no longer housed at the McConnell Unit.  See Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998) (request for injunctive relief generall y becomes moot upon the happening of the event sought to be enjoined).  Because  plaintiff is no longer at the McConnell Unit, he is no longer subject to the cell leaks and his claim for injunctive relief is moot.

**B.      Conditions of confinement.**

Plaintiff is suing Director Dretke and Warden Stevens in their individual capacities for money damages alleging unconstitutional conditions of confinement.   He alleges that both defendants were negligent and grossly negligent in failing to investigate his claims and failing to correct the unsafe cell conditions.  PR at 3.

The Supreme Court has determined that "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment's prohibition on cruel and unusual punishment requires that prison officials provide humane conditions of confinement.  Prison officials must "ensure that inmates receive

adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Two requirements must be met in order for a prison official to be held liable under the Eighth Amendment for denying humane conditions of confinement. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (quotation marks omitted). In evaluating conditions of confinement, the totality of the circumstances of the inmate's confinement, including the duration of the circumstances, must be considered. Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999).

Second, a subjective requirement requires that it be determined whether the prison official was deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Id. at 835 (construing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. Farmer, 511 U.S. at 837.

Here, plaintiff was housed in McConnell Unit's 12 Building, cell A-09 from February 24, 2004 until September 7, 2004. DSJ Ex. C at 1. Prior to the March 14 rain and his related fall, plaintiff never filed a written grievance complaining about the leaky roof or water in his cell. See DSJ Ex. D. Even after he was returned to the same cell following his injury, he did not request a cell change, but only that the repairs be made. DSJ Ex. D at 1-2, 3-4. Plaintiff fails to establish

9

that the leaks in his cell were so serious and continuous to constitute the deprivation of adequate housing.

Moreover, plaintiff cannot establish that either Director Dretke or Warden Stevens were deliberately indifferent to his safety. The uncontested evidence establishes that the McConnell Unit administration was aware of roof leaks throughout the facility. See DSJ Ex. B (maintenance records). Repairs were continuously being made throughout the unit. DSJ Ex. B at 1-4. Since August 15, 2002, the McConnell Unit has had a major work request in place to replace the roofs on the entire unit. DSJ Ex. B at 3. A complete roof replacement is scheduled for fiscal year 2006-2007. Id. One craftsman has been assigned to the McConnell Unit to assist with roof repairs. Id.

The mere fact that defendants were aware that the roofs throughout the prison facility needed to be replaced is insufficient to prove that defendants were deliberately indifferent to plaintiff's health and safety. To the contrary, the evidence shows that a concentrated effort was being made to protect the health and safety of plaintiff and other inmates by responding to maintenance work orders. DSJ Ex. B. In fact, plaintiff himself does not characterize defendants' conduct as deliberately indifferent, but as negligence and gross negligence. See PR at 3-4. Allegations of negligence against prison officials fails to state a constitutional violation. Domino, 239 F.3d at 756.

Finally, neither the unit maintenance records nor plaintiff's grievances demonstrate that either Director Dretke or Warden Stevens had personal knowledge of the McConnell Unit's roofing conditions. Personal involvement in an alleged constitutional deprivation is an essential element of a civil rights cause of action. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). To state a cause of action under § 1983, plaintiff must enunciate a set of facts that illustrates each

defendant's participation in the alleged constitutional deprivation.  Jacquez v. Procunier, 801 f.2d 789, 793 (5th Cir. 1986).

     Here, plaintiff does not allege that either Director Dretke or Warden Stevens were personally involved in the failure to repair the leaky roofs.  Rather, he argues that they should be held liable because, as director and warden, they are responsible for the "day to day" operations of the prison.  PR at 3.   This claim does not allege personal liability, but supervisor liability, and is not actionable in a civil rights action.  See, e.g., Beattie v. Madison County School Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, 694 (1978) (a plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*); Thibodeaux v. Arceneaux, 768 F.2d 737, 739 (5th Cir. 1985) (per curiam) (supervisory officials may not be held liable for their subordinates' actions under § 1983).

     Plaintiff offers no evidence to suggest that either Director Dretke or Warden Stevens had the authority to order the necessary roof repairs.  According to defendants, all major work requests must be approved by TDCJ officials in Huntsville, Texas.  DSJ at 7.   The McConnell Unit had such a major work order to repair the roofs in effect since August 15, 2002, and the roof replacement is scheduled for the 2006-2007 fiscal year.  DSJ Ex. B at 3.  Plaintiff fails to establish personal involvement, let alone deliberate indifference.  Accordingly, defendants are entitled to summary judgment.

## VI. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment, (D.E. 36 ), is granted, and plaintiff's claims are dismissed with prejudice. The November 9, 2005 trial setting is cancelled.

ORDERED this 26th day of August 2005.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE